So you're Mr. Meier, is that the way you pronounce it? Yes, sir. Excellent. Yes, Your Honor. It's a made-up name. My family were Larsons who moved to Minnesota from Norway, and there were too many Larsons up there. And so they actually, when they moved, they switched their name and created Meier. There you go. What was the reason for the Meier's push, instead of some other name like Portsebe or something like that? You know, you'd have to ask them. They are much, much older than I, unfortunately. Very well. I'm ready whenever the court is.  Yes, thank you. Your Honors, and may it please the Court, my name is David Meier from the law firm of Queen Emanuel Urquhart & Sullivan, and I'm here on behalf of the petitioner, Appellant Drum Lodge, LLC. This appeal involves two issues that, even taking into account the deference that is given to arbitration panels, we believe it is important to raise to ensure that parties' contractual agreements are abided by and that a fair hearing is provided to Drum Lodge, LLC. So the first issue I'd like to address relates to the award of prevailing party attorneys' fees to Martel Construction, Inc., the appellee. The law here is clear and I believe agreed upon. It's California law, and California law says that absent a contrary agreement, each party is responsible for its own attorney's fees. And that's Austin v. Allstate for Cal App 1812. Forgive me. I thought that we were dealing with Construction Rule 48d-2. California Civil Code 1717 is a very interesting statute with which we deal from time to time, but is that at play here? So I do believe that Construction Rule 48 applies here. And if that's the case, my understanding is at least Martel takes the position that both parties agreed that there was going to be mutual attorney fees. Do you disagree with that? I agree that the rule applies. I disagree that both parties agreed that a prevailing party's attorney fees wouldn't apply. But the arbitration panel concluded otherwise, right? I don't agree with that either. You don't agree with that, okay. And I think it's important, and I want to walk through the language, because I think what Construction Rule 48 says is that if both parties seek prevailing party attorneys' fees, that can act as a rule that says, okay, everyone agrees we're going to do that. Now, where I disagree. But identity, the fees under identity don't do that? Is that a summary of your position? Correct. And that's a very specific. It's a California's rule that says it's the reciprocity about identity. So if one side, if you have an identity provision, both sides get it. I don't think that's been presented to the court. I don't think that's been argued. I don't think it applies here. I think that the argument. But if we're, yeah, I suppose, assume for a second that's true. How does that interplay with, and I'm just asking because I'm curious, how does that interplay with our review of arbitration decisions is usually fairly deferential, right? So if the arbitrators may have, I know they didn't talk about that, but if they may have taken that into consideration, then would we, you know, would we be allowed to overturn that if it seemed like that would be a reasonable, as long as it wasn't an outlandish decision, as long as any jurist could have reached that sort of decision? Respectfully, I believe the answer is no. Because what we look at is what the parties agreed to present to the arbitrators. We look at what the arbitrators considered, addressed, and discussed. And that is construction rule 48. Isn't there a notion, though, that you sort of changed or expanded the scope of your request, that towards the end of the arbitration you requested reasonable attorney's fees? No, Your Honor. And I think that's very important. The written record is absolutely clear. There is not one piece of written paper where Drum Lodge expanded its request to prevailing party attorney's fees. But the arbitrators so found, correct? I don't believe that they did, Your Honor. Okay. And I would direct you to – Can I just – Yeah, please. I just want to be sure because we are both – you said there's no paper that says that. Yes. My understanding is part of this was oral, and that's what the arbitrators understood. Is that incorrect? It is correct that part of it is oral. But I would like to direct the court, and I'm happy to walk through it, to what the arbitrators actually found. They spoke to the oral discussions. They never once found – and this is – you can look at 1 ER 30. That's the interim ruling. The panel never once found that Drum Lodge, orally, in writing, in any other form or format, requested prevailing party attorney's fees. That's what Construction Rule 48 speaks to. I can say – we looked at a different record, I think. That's not my understanding. My understanding is I don't remember any recitation of California Civil Code 1717 A. They cited Construction Rule 48 2I and understood that both parties had requested that. They didn't say it was in writing, but they understood from the oral presentation that that's what both parties were asking for. Isn't that enough in an arbitration setting? Respectfully, we submit no. And I'm looking at one – Why? Because I'm looking at 1 ER 30, and it said – this is a quote from the arbitration panel. At the end of the evidentiary hearing on June 28, 2023, the panel chair inquired whether the parties were seeking an award of attorney's fees. Counsel for Martel and for Drum Lodge answered affirmatively. Now, I don't dispute that Counsel for Martel answered affirmatively. They found that Drum Lodge did, too. Because we requested attorney's fees under the indemnification provision. Where is that indicated in the arbitrator's notation? I'm also looking, just for your information, at 3 ER 578-79.  Because at this point, you're citing to the interim findings, correct? Correct. Okay. And what the panel said in the interim, in the interim decision, is that after their interim decision – and this is, again, 1 ER 30 – it says that the parties can file any objections to any request for attorney's fees in the second round of briefing. In the second round of briefing, we raised the exact point that I believe Your Honor is referring to, is that we never agreed that there was some mutual fee-shifting agreement here. We made clear in the objections that at all times throughout this process, the only way that Drum Lodge requested attorney's fees was through a one-sided contractual indemnification provision. And so what they're doing is – Forgive me. Again, I think you're like a different record than I am. Because if we take as given what you just said, what was the arbitrator's response to that? Because my understanding is when they came away with it, they understood that under the Rule 48d-2 that both sides had requested it. That's what they awarded. I didn't see anything in a colloquy between attorneys for Drum Lodge and the arbitrators that suggested there was any ultimate dispute or if there was a dispute, that it was resolved against Drum Lodge. Is that correct? I think that I would direct you to 3 ER 578 to 579 and 3 ER 603, note 11. And in both of those, it makes clear that Drum Lodge was seeking to enforce a contractual provision. Well, a contractual provision, you mean you're not talking about the indemnification? Okay, but you're not talking about the Rule 48d-2. You're talking about – you're saying there was no contractual provision that would have underlay an award of attorney fees. Is that right? I think it's a little bit different. I would say it this way. I think that Rule 48d-2 says that if everyone agrees prevailing parties just get their fees. If both parties ask for it. And that's what the arbitrators concluded that occurred. Respectfully, I think the record is clear. I think that not even my co-counsel on the other side says that we requested prevailing party attorney fees. Well, you say prevailing party. That's almost – it doesn't matter what you say prevailing party. The bottom line is you both wanted attorney fees. The net impact of that is whoever wins gets them. So if you don't use the term prevailing party, you're still asking for attorney fees. You asked for them because you thought you were going to win. Martel asked for it because they thought they were going to win. That's what they asked for, right? Respectfully, they certainly asked for them because they thought they were going to win. We asked for them regardless. We said that under the indemnification provision, no matter how this goes, we are indemnified for losses, which included attorney fees. So let me make sure – there's kind of two issues here. I just want to make sure we're understanding your argument. Your argument is there's kind of two issues. One is the legal question of whether asking for indemnity, one-sided indemnity fees counts as construction rule 48 or whatever.  So that's the first issue. And then the second issue is more of a factual issue about what the arbitrator said happened here because as I'm reading this ER30 that you were deciding to, they are saying aside from that first issue, which I think we can only overturn on their understanding that 48 covers even identification fees if that was so clearly erroneous. It's a pretty high bar, I think. Correct me if I'm wrong on that, but put a pin in that for a second. The second issue is their answer was – you told the arbitrator, obviously, the appeal. You told them, hey, we didn't ask for – you made the same argument to them that you're making us. And they responded, as I read it, Drum Lodge contends that its request for attorney fees is limited by its indemnity counterclaim. And their response wasn't just that you're wrong legally on that. Their response was, however, you didn't condition your answer when we asked you. You didn't say we're only asking for indemnity counterclaims. And so they read you as asking – the arbitrator read you as asking for – unconditionally asking for attorney fees. And two questions about that. One is, do you dispute that they are – whether they're right or not about that you didn't condition? And then the second question, maybe you don't dispute that. Yeah, maybe we didn't condition, but it should have been clear that we had – that we were referring back to what we had asked for before. So I'm just trying to figure out what you're – where you're sort of disagreeing with the arbitrators. Because it's very differential to the arbitrators. And so I'm trying to figure out where your dispute with them is. It's both, Your Honor. And we have a declaration – So you dispute – okay, so A, you do dispute that you did not condition your request. Because they say you didn't condition. They say Drum Lodge did not condition or limit its affirmative action to success on its indemnity counterclaim. So they – so you say, yes, I disagree with them, with the arbitrators on that. We did condition it. Yes. And then you also don't think it would have mattered if you didn't – whether or not you did or didn't. Correct. And there's a declaration in the record where we say that we never agreed that it would be prevailing party attorney's fees. And the second point is – it is – the second point would be a waiver point. And this is at reply, page 9 of our brief. And let's assume that I didn't, which the record doesn't reflect. But even if that's true – and this is – we cite Wilson 13 Contracts, Section 3928, and Shearing Certified Alloy Products, 2009 Westlaw 4882847. So in answer to your question, one, it didn't happen. That's in the record. There's a sworn declaration to that effect. Second, even if it did happen, that is not sufficient. So the challenge I've got is that you've got to win on a lot of things. And I know we're running out of time. But you've got to win on a lot of things. Because, A, you have to be right on your – identity doesn't count for construction rule 48. And I think we have to legally defer to – even on legal questions, we have to basically defer to the arbitrator. But then you also have to be right on a factual question here as to whether or not – because I think you would agree – let me know if you agree – that there was written parts of the record. But my understanding is there was some just oral stuff that wasn't written down. So you have to convince us that factually they're blatantly wrong, so to speak, that the arbitrator is blatantly wrong. And am I right? So it's quite a hurdle for you to cover. You have, like, multiple big hurdles to overcome. And so I'm trying to – am I right in thinking that? Or is there some way for you to avoid those hurdles? I can appreciate that. I know I'm running out of time. All I would ask is for the court to respectfully look at the briefing. I think there is a – I submit to the court there is an absence of evidence. And everyone, the arbitrator, could have said we requested prevailing party fees. They could have said we requested prevailing party fees. If this weren't an arbitration, that would be a good argument. But it is. Thank you for your time, Your Honor. Thank you. If I may, sir, may we leave the last 30 seconds for – No, no, you've got those. We may give you a tiny bit more, okay? Okay. Very well. All right. Did you say Geddes? Yes, Your Honor. Nice job. Most people aren't able to do that. Listen, I don't always get it right. I try. And may it please the court, my name is Devlin Geddes. I'm with the Getz Law Firm out of Bozeman, Montana. I represent Martel Construction out of Bozeman, Montana. With me is Martel's president, Tony Martel. I had some introductions that I was going to go through, but I appreciate the focus on Rule 48D from the construction rules. I also appreciate counsel's willingness to conceive that 48D was incorporated into the party's contract and the concession that both parties did request attorney's fees. I understand that Drum Lodge takes the position that their request for attorney's fees was unilateral, and Martel takes the position that its request for attorney's fees was. Can I ask why? I think they – I asked a short question about California's reciprocity rule that I run across. The only reason I know about it is because I ran across it in other cases that I've had. That's a pretty strong argument for your side, is that if they asked – if they have a indemnity provision, California basically makes both sides – which is kind of weird – makes both sides indemnify. And so was that argument made at all by Martel's side of this, by you all, I guess? And if it wasn't, is it way before us, or do we – or could we sort of assume that the arbitrators may have relied on that rationale? Candidly, Your Honor, I don't know. I focused in on Rule 48d because that's what the arbitration panel focused on, and that's what Martel has focused on throughout the case. But their argument is – but their argument is these don't fall into – indemnity fees don't fall into Rule 48 because they're not – they're not basically asking for our fees in the way that Rule 48 – but if you couple the indemnity request with California's rule, it essentially turns something like that into a reciprocity provision. There is case law in California about how that just creates – how that – and we had our old – we had an old case that I recently overturned in an opinion, which is the DeWitt case, which basically said that. So I just wonder why you guys didn't rely on DeWitt. We may have. It might be in the briefing below at the arbitration level.  I just don't have an answer. You're not sure? Okay. Those briefings is in the record. But I do want to focus in on your question because the term prevailing party keeps getting thrown around here. And if we actually read Rule 48d-2, it states, the award of the arbitrator may include an award of fees if all parties have requested such an award or if it's authorized by the law or the contract. There is nothing in that section that says prevailing party fees. There is an admission from Drum Lodge that it requested fees. I disagree with the contention that it was limited, as did the panel in its factual findings. Martel requested fees. Under my reading of Rule 48d, that's enough to engage the rule such that the panel may, in its discretion, award fees. It doesn't even have to be prevailing party fees. You know, that was the suspender's argument. Even if they were only asking for identity fees, under the plain language of Rule 48, you win. It doesn't matter. Plus, you're saying they didn't just— you agree with the arbitration panel that they didn't so limit, at least in certain times, orally, they didn't so limit. And the record is, from the very beginning, when counsel cited to the statement of record, that early on in the case, before Mr. Meyer was involved, Drum Lodge did limit its request to the indemnification provision. As we move through the proceeding, we get to the end, and the panel specifically looked at both sides and said, are you requesting fees? Answer yes. Are you requesting fees? Answer yes. Hence, we have the finding that counsel for Martel and Drum Lodge each answered affirmatively. And I agree with Your Honor, that is a procedural fact-finding by the panel that this court is loathe to overturn without some evidence that it was absolutely an incorrect factual finding. Is it fair to say that we really don't need to focus on California Civil Code 1778 at all? Because they didn't rely on that. Asking both parties about it, and as was discussed, it's a factual finding. They relied upon it. I'm a California lawyer, and I'm very familiar with 1717A. I don't see that has anything to do with it. You could, I suppose, splice it in, but you don't need it. I would agree, Your Honor. I'm not saying the panel disregarded that statute. I'm a Montana attorney and not familiar with the California Code. But I do know that the panel relied on 48D2, and I do know that Martel made the request for recovery of fees, and so did Drum Lodge. And from your perspective, that's really all it takes. That is all it takes. You got that rule. You asked for it. They asked for it. You don't need to use the term prevailing. Both parties wanted it. They both thought they were going to win. One did. One got the attorney fees. Correct. Can I switch to the other subject just for a minute? Yes. Your learned opposing counsel has made the interesting argument that because, I don't know who exactly said, but you, said to the arbitrators, you know, we don't have very good arbitrators up here. Would you all be interested in doing it? I'm just, you know, not directly. But basically, would you ever be interested in coming up here? And he takes the position that that is, in effect, a basis for overturning the decision here. What's your response to that? Sure. Your Honor, I want to make sure the record is clear. There are qualified arbitrators in Montana. Yeah. I heard some of them were really upset when they heard what you said. Our arbitrators are slowly retiring in Montana, and that's where the issue is. So we are light on, especially in the construction industry, arbitrators in Montana. During one of the breaks, I did say, can attorneys licensed in California arbitrate cases in Montana? And the answer was yes. In fact, we've arbitrated in other states before. And then the conversation switched to we love Montana, it's beautiful, we mountain bike there, been to Whitefish. And I don't know whether it was this distinguished gentleman or somebody else, but the attorney for Drum Lodge was there and heard this, right? Mr. Meyer was not in the room, but one of his associates was in the room while that conversation was occurring. Yes, Your Honor. No objection was made at the time saying, wait a minute, you can't say this. No objection was made until eight months later, after the final award was entered. And the very first time that we saw the objection was when the petition to vacate was filed with the district court. That was also the first time that we saw a copy of the unofficial transcript. So my response is to point Your Honor to Your Honor's case in Durga Ma. We have not only evidence here of constructive knowledge, but we have actual knowledge by counsel of this purported ex parte communication. And it was Drum Lodge's duty at that point in time, not only under Durga Ma, but also under construction rule 42, to raise the objection timely or have it be deemed waived. And so my response to the argument is that waiting after the preliminary award, after the final award, and not raising the issue until the matter is pending before the district court is just untimely and therefore it's waived. Is there any case law that you're aware of that would support their position under the circumstances? The best case I have been able to find for Drum Lodge is the Valrose case out of the District of Hawaii. I don't think that case applies here because in that example, Your Honor, there was a communication between counsel and an arbitrator before the subject arbitration was even being considered. And they were talking about hiring that arbitrator. The arbitrator was hired for the pending case, and then during the pending case was subsequently hired for the unrelated case to arbitrate. The court eventually vacated the arbitration because it held that the arbitrator had a duty after being retained in the unrelated case to disclose that, and the arbitrator failed to do so. That's the closest case I've been able to find, but this case is just an opposite. We did not hire any arbitrators. In fact, I haven't spoken to the arbitrator since the final award. I wrote a case called Mald Monster, but it was a jams case. Yes. Where they didn't disclose ownership. And I'm pretty familiar with this area. I don't see anything like that here. It seems like a very different situation. There was no statement. Boy, if you want to come up here, we'll really take care of you. You know, that kind of thing. Or an ex-party communication. Right. I agree, Your Honor. I did go through the Monster Energy case. In fact, that's the case that Drum Lodge primarily relies upon as its basis. And I can understand the reason for overturning the arbitration in that circumstance. Excellent. Because it wasn't learned until the actual district court action that there had been a conflict at that point in time. With that, Your Honor, I have more time. I'm happy to answer questions. Any other questions by my colleagues? I think not. Very well. Thank you. All right. Mr. Meyer, you don't have much time left, but we'll give you a couple of minutes if you need it, if you want it. I'll take the 22 seconds, Your Honor. Okay. That's fine. The parties, they signed a contract, okay? It had an indemnity clause. It gave my client the right to indemnity. We're now all agreed Rule 48 is the only rule that is being considered here. My client had a right to indemnity under a contractually agreed clause. As I'm hearing it now, or if the outcome is that the district court's ruling is upheld, my client is being penalized for exercising or at least seeking to exercise its right to indemnity. Wait a minute. You're basically harking back to 1717 now. 1717 is not an issue. I know, but I'm saying if you're saying that you're hanging your head on indemnity and you had a right to indemnity then under California law, they had the right as well. If you lose the case, they win on that issue, right? No. Why is that? That issue was not raised before the arbitration. I understand, but you're not raising it. You can't have it one way. I mean, either you're relying on indemnity or you're not relying on indemnity. They're relying on Rule 48d-2. They say you said it was okay. Both parties, you disagree with the factual finding. But if you're saying, wait a minute, you can't rely on that. You've got to rely on the contract. If you're doing that, then you're back in 1717 land. Respectfully, I think, and then I'll cede my time. I apologize for taking more time. Respectfully, I think all my client has ever sought to do in this case, and I think the record reflects it. I think the written record reflects it. I think the oral record reflects it. I think the writings by the panel reflect it. I think the opposition brief by Martel reflects it. Is that at all times the only thing we sought to do? So I understand what you're going to say. We know what you're going to say. But no, no, this is kind of important because, you know, what you're relying on on the 1717 is that they never brought it up. But if 1717 is this California background rule that makes indemnity provisions reciprocal, it's not clear to me that they needed to bring it up. You know, because the arbitration panel, their rationale on that ER30 is you didn't bring up, and it's a little bit of a harsh rule, but I'm not sure whether we still have to, I mean, we have to defer to harsh rulings by arbitration panels. But it's a little bit harsh to say, well, when you said you were asking for attorney's fees, you didn't orally, you didn't explicitly say, we're only asking for identity. That seems a little bit harsh. I get your position on that. But if you couple that with the California reciprocity, the background California reciprocity rule, then it doesn't seem quite as harsh because you just asking for identity is essentially asking for attorney's fees against that backdrop. You see what I'm saying? You're relying heavily on them having waived it. But since it's a reciprocity rule that sits there in the background, it's not clear to me that you didn't need to raise it. The last thing I'll say is why I respectfully disagree is because we did raise it in writing repeatedly in our briefing. Just by asking for it only as identity, you're saying. Yes, Your Honor. Thank you. Thanks to both gentlemen for your argument. Appreciate it. And it's very interesting about how you got your last name. Yes. Thank you. Thank you both for your argument. The case just argued is submitted, and the court stands adjourned for the day. All rise. This court for this session stands adjourned.
judges: SMITH, VANDYKE, Stinson